UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| VELIQ USA, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 15-cv-10197-ADB |
| | * | |
| MOBILLOGIX, LLC, | * | |
| | * | |
| Defendant. | * | |

<u>MEMORANDUM AND ORDER</u>

March 6, 2015

BURROUGHS, D.J.

**I.     Introduction**

In this action for breach of contract and declaratory judgment, VeliQ USA, Inc. ("VeliQ USA") alleges that Mobillogix, LLC ("Mobillogix") breached a Master Service Agreement ("MSA") under which Mobillogix was to purchase licenses to VeliQ USA's platform, incorporate that platform into Mobillogix's own product, and then sell that product to Mobillogix's end user customers. VeliQ USA alleges that Mobillogix breached the MSA by refusing to pay VeliQ USA for the licenses it agreed to purchase.

VeliQ USA is a Massachusetts corporation based in Boston, Massachusetts, and Mobillogix is a Delaware corporation with an address in Baltimore, Maryland.

Before the Court is Mobillogix's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer (ECF No. 7). As to the alternative request, if the Court finds that dismissal is not warranted, Mobillogix asks the Court to transfer the case to the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1404. For the reasons discussed herein, Mobillogix's motion is denied as to both requests.

## II. Legal Standard

As the plaintiff, VeliQ USA bears the burden of establishing the Court's personal jurisdiction over Mobillogix. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). Under the "prima facie" standard for determining whether VeliQ USA has met its burden, "the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." Bluetarp Fin., Inc. v. Matrix Constr. Co., 709 F.3d 72, 79 (1st Cir. 2013) (quoting Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)). "The plaintiff's properly documented evidentiary proffers are accepted as true for purposes of making the prima facie showing, and we construe these proffers in a light most favorable to plaintiff's jurisdictional claim." Id.

The Massachusetts Long-Arm Statute, G.L. c. 223A, § 3, provides, in relevant part: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth . . . ." In Massachusetts, "[w]e may sidestep the statutory inquiry and proceed directly to the constitutional analysis, however, because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'" Daynard, 290 F.3d at 52 (quoting "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441, 443 (1972)).

The First Circuit applies a three-part test in determining whether the exercise of personal jurisdiction over a nonresident defendant is constitutional:

> (1) whether the claim "directly arise[s] out of, or relate[s] to, the defendant's forum state activities;" (2) whether the defendant's in-state contacts "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the

defendant's involuntary presence before the state's courts foreseeable;" and (3) whether the exercise of jurisdiction is reasonable.

C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014) (quoting Daynard, 290 F.3d at 60).

## III. Discussion

### A. Personal Jurisdiction

In its Opposition brief (ECF No. 12), VeliQ USA makes certain evidentiary proffers supported by affidavit of its Chief Financial Officer (ECF No. 13). At this stage, the Court accepts these evidentiary proffers as true. Without reciting all of VeliQ USA's proffered facts, the Court highlights those items that are most salient to the First Circuit's three-part test regarding the constitutionality of personal jurisdiction.

VeliQ USA is a Massachusetts corporation with its headquarters and sole U.S. office in Boston. VeliQ USA is wholly owned by VeliQ B.V. LLC, a Dutch company.

Negotiation of the MSA took place primarily through email and telephone communications between Mobillogix's founder and Chief Executive Officer and VeliQ USA's Vice President of Sales, who was located in Boston. On February 20, 2014, VeliQ USA emailed a draft of the MSA to Mobillogix. Nearly all of the terms of the MSA were finalized in a February 24, 2014 telephone call in which VeliQ USA employees participated from their office in Boston. The MSA was executed later that week, on February 26-27, 2014, in Las Vegas, Nevada, where both parties' signatories were attending a convention. The MSA, a two-year agreement, clearly states on the cover page that VeliQ USA is a Massachusetts corporation with an address in Boston.

After the MSA was signed, Mobillogix made an initial payment to VeliQ USA by sending $100,000 to VeliQ USA's Bank of America account in Boston. VeliQ USA began

providing support to Mobillogix in the form of integration, technical support, and training. From March 2014 through October 2014, on multiple occasions, Mobillogix representatives communicated by telephone and email and participated in online trainings and meetings with VeliQ USA employees located in Boston. These communications included eight online demonstrations to Mobillogix employees and Mobillogix's business prospects, and six other calls or online presentations with Mobillogix employees, all conducted from VeliQ USA's Boston office. In March 2014 and again in September 2014, Mobillogix's CEO made two trips to Boston for meetings with VeliQ USA.

Applying the First Circuit's three-part test to these circumstances, the Court holds that VeliQ USA has satisfied its burden of establishing personal jurisdiction over Mobillogix.

The first prong, relatedness, requires the plaintiff to show "a demonstrable nexus" between the plaintiff's claims and the defendant's forum-based activities, such that "the litigation itself is founded directly on those activities." Downer, 771 F.3d at 66 (quoting Adelson v. Hananel, 652 F.3d 75, 81 (1st Cir. 2011)). Relatedness is a "flexible, relaxed standard." Id. In a contract case, the focus is on "the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" Id. (quoting Daynard, 290 F.3d at 52).

Here, Mobillogix negotiated the MSA with VeliQ USA employees located in Boston. It entered into a two-year business relationship with VeliQ USA, while fully aware that VeliQ USA was a Massachusetts corporation with its sole office in Boston. After entering into the MSA, from March 2014 through October 2014, Mobillogix had frequent contact with VeliQ USA employees who were providing services in connection with the MSA. Mobillogix's CEO also made two trips to Boston for meetings with VeliQ USA. Under these proffered facts, VeliQ

USA's claims are sufficiently related to Mobillogix's forum-based activities. See id. (relatedness satisfied for breach of contract claim where Canadian corporation entered into long-term contract with Massachusetts corporation and frequently communicated remotely with employees of Massachusetts corporation).

The second prong, purposeful availment, asks whether "the defendant's in-state contacts . . . represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." Daynard, 290 F.3d at 61. "The cornerstones of this inquiry are voluntariness and foreseeability." Downer, 771 F.3d at 66 (citing Daynard, 290 F.3d at 61). This factor prohibits jurisdiction where the defendant's contacts with the forum state are "random, fortuitous, or attenuated." Id.

In this case, Mobillogix entered into a two-year contract with VeliQ USA, knowing that VeliQ was a Massachusetts corporation with its office in Boston. Mobillogix's employees had months of frequent contact with VeliQ USA's employees in Boston via email and telephone, and Mobillogix's CEO traveled to Boston for two in-person meetings with VeliQ USA. Under these proffered facts, Mobillogix's contacts with Massachusetts were far from "random, fortuitous, or attenuated," and the prong of purposeful availment is satisfied. See id. at 67 (purposeful availment satisfied where the defendant knew it was contracting with a Massachusetts bank and "the contract was not of a short duration or quickly accomplished").

The third prong, reasonableness, is assessed by reference to five "gestalt" factors:

> (1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Id. at 69 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994)); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77 (1985). These factors play a more limited role in this case than they would in a case where "the minimum contacts question is very close." Downer, 771 F.3d at 69 (quoting Adelson, 510 F.3d at 51). Moreover, because VeliQ USA's "showing on the first two prongs of the inquiry is strong," Mobillogix "carries the burden of defeating jurisdiction with a similarly strong showing of unfairness." Id. at 71. Mobillogix has not met this burden.

The first factor, the defendant's burden of appearance, is "only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). Mobillogix has not alleged any special or unusual burden.

The second factor, the forum state's interest, favors exercising personal jurisdiction because "Massachusetts has 'significant' interests in providing a convenient forum for disputes involving its citizens and in ensuring that its companies have easy access to a forum when their commercial contracts are said to be breached by out-of-state defendants." Downer, 771 F.3d at 70 (citing Champion Exposition Svcs., Inc. v. Hi-Tech Elec., LLC, 273 F. Supp. 2d 172, 179 (D. Mass. 2003)). Mobillogix argues that Massachusetts has little or no interest in this action because the parties contractually agreed that the MSA and any related disputes would be governed by New York law. In fact, a forum state's interest in adjudicating the dispute is independent of the substantive law that governs the dispute. Id. at 70 n.6.

The third factor, the plaintiff's interest, weighs in favor of personal jurisdiction in light of the deference traditionally accorded to a plaintiff's choice of forum. See Daynard, 290 F.3d at 62.

The fourth factor, effective judicial administration, is "[u]sually . . . a wash," Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 718 (1st Cir. 1996), as the Court concludes it is in this case.

The fifth and final factor, public policy, favors exercising personal jurisdiction because Mobillogix voluntarily entered into a two-year agreement with VeliQ USA, knowing that its contracting partner was a Massachusetts entity with its sole office in Massachusetts, and should not be able to force VeliQ USA to travel to a foreign jurisdiction to enforce its contractual rights. See Champion, 273 F. Supp. 2d at 179 (holding that public policy counsels in favor of jurisdiction in an action "about a business agreement with a Massachusetts entity, formed as a result of [the defendant's] Massachusetts contacts").

In sum, under the First Circuit's three-part test, VeliQ USA has met its burden of establishing the Court's personal jurisdiction over Mobillogix.

### B. Change of Venue Request

Mobillogix's alternative request to transfer the case to the District of Arizona pursuant to 28 U.S.C. § 1404 is denied. The decision to change venue is in the trial judge's discretion. See Champion, 273 F. Supp. 2d at 180. "[T]he defendant must bear the burden of proving both the availability of an adequate alternative forum and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." Id. (quoting Nowak, 94 F.3d at 719). "The plaintiff's choice of forum will be disturbed only rarely." Id. The only ground that Mobillogix offers in support of its change of venue request is that litigating in Arizona would be more convenient for Mobillogix. In light of the demanding standard for granting a change of venue, the Court declines to exercise its discretion to transfer the case merely on the basis of Mobillogix's convenience.

**IV.     Conclusion**

For the foregoing reasons, Mobillogix's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer is <u>DENIED</u>.

**SO ORDERED.**

Dated: March 6, 2015

<u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
DISTRICT JUDGE
